OPINION OF THE COURT
John D. Doyle, J.
Defendant stands charged under indictment No. 361 with the crimes of rape in the third degree and endangering the welfare of an incompetent person. Defendant now moves for *476 an order dismissing the indictment on various grounds and dismissal of the indictment based on the unconstitutionality of Penal Law §§ 130.10 and 25.00 (2).
DISMISSAL OF INDICTMENT
Defendant alleges the Grand Jury proceedings were defective for two reasons. First, that the use of the victim’s videotaped testimony was unconstitutional and failed to meet the requirements of CPL 190.32. And second, that the victim’s use of anatomically correct dolls during her testimony was neither helpful nor appropriate and prejudiced defendant.
VIDEOTAPED TESTIMONY OF SPECIAL WITNESS
 Defendant raised several objections to the introduction of Cynthia Rudgers’ videotaped testimony in the Grand Jury pursuant to CPL 190.32 in his papers and at oral argument. First, defendant contends that CPL 190.32 is unconstitutional. Second, he contends that Rudgers is not a "special witness” within the scope of CPL 190.32. For the following reasons I uphold the constitutionality of CPL 190.32 and reject defendant’s challenge to Rudgers’ special witness status.
The first issue is whether or not CPL 190.32 impairs the power of the Grand Jury to hear and examine evidence because testimony by a special witness is presented on videotape rather than in person. Defendant bases his argument on article I, section 6 of the NY Constitution which gives the Grand Jury the power to hear and examine all evidence and states that the Grand Jury’s power to do so "shall never be suspended or impaired by law.” A discussion of the relevant provisions of CPL article 190, "The Grand Jury and its Proceedings”, is helpful to the determination of this issue.
CPL 190.32 (3) states in part that "[wjhenever the district attorney has reason to believe that a witness is a special witness, he may make an ex parte application to the court for an order authorizing the videotaping of an examination of such special witness and the subsequent introduction in evidence in a grand jury proceeding of that videotape in lieu of the live testimony of such special witness.” Under CPL 190.30 (4), this videotape may be received in evidence, however, nothing in subdivision (4) "shall be construed to limit the power of the grand jury to cause any person to be called as a witness”. (CPL 190.30 [5].) "The grand jury may cause to be called as a witness any person believed by it to possess *477 relevant information or knowledge. If the grand jury desires to hear any such witness who was not called by the people, it may direct the district attorney to issue and serve a subpoena upon such witness, and the district attorney must comply with such direction.” (CPL 190.50 [3].)
The Legislature gave the Grand Jury the power to subpoena any person it believes possesses information or knowledge of the crime(s) it is investigating. Further, the Legislature expressly stated in CPL 190.30 that the statute providing the authority to introduce videotaped testimony could not be construed to limit the Grand Jury’s power to subpoena Rudgers if it needed her live testimony. Indeed, after careful review of the Grand Jury minutes in this case, the Grand Jury raised no questions of, nor initiated any discussion about, Rudgers or the fact that the District Attorney presented her testimony on videotape, leaving this court to believe that the videotaped testimony was accepted by the jurors as sufficient. In addition, the Assistant District Attorney conducting Rudgers’ examination on tape and presenting the case to the Grand Jury said nothing to indicate that this particular witness’s testimony should be given any special consideration or credence because of the manner by which her testimony was presented. I find this particularly important as undue emphasis may have intimidated the jurors and prevented them from asking questions, if they had any. The only difference between her presentation of Rudgers’ testimony and that of the other witnesses was her inquiry to the jurors as to whether or not they had any questions for the witness.
It appears that if any of the jurors had questions, the District Attorney would have had to either subpoena Rudgers or would have had to make arrangements to ask the questions on videotape. Although the jurors did not independently raise questions after viewing the videotape, I must assume they were aware of their power to do so and I rely on their power under the Constitution to examine all evidence.[1] In the future, however, the District Attorney should expressly ask whether or not any jurors have questions for the witness just as they do for live witnesses.
The second issue raised by defendant is whether or not *478 Rudgers is a special witness within the scope of CPL 190.32. That provision states in pertinent part that:
"1 * * * (b) 'Special witness’ means a person whom the people intend to call as a witness in a grand jury proceeding and who is * * *
"(ii) More than twelve years old and who is likely to suffer very severe emotional or mental stress if required to testify in person concerning any crime defined in article one hundred thirty or two hundred sixty or section 255.25 of the penal law to which the person was a witness or of which the person was a victim * * *
"3. Whenever the district attorney has reason to believe that a witness is a special witness, he may make an ex parte application to the court * * * The application must be in writing, must state the grounds of the application and must contain sworn allegations of fact, whether of the district attorney or another person or persons, supporting such grounds. Such allegations may be based upon personal knowledge of the deponent or upon information and belief, provided, that in the latter event, the sources of such information and the grounds for such belief are stated.”
The court is aware that this provision is new and untested. As the parties pointed out, little case law explaining the operation of this provision and addressing the issues raised here exists. What little there is, however, is not helpful to the case at hand. (See, People v Robinson, 125 AD2d 612 [2d Dept 1986]; People v Rafajlovski, 131 Misc 2d 76 [Sup Ct, Kings County 1986].)
As the ex parte proceeding determining Rudgers to be a special witness was conducted and received into evidence pursuant to CPL article 190, this court has the authority to inspect the stenographic minutes of the Grand Jury to determine the sufficiency of the evidence presented by the People (CPL 210.30). Thus, the People’s application may be reviewed by this court.
Here, the People made an ex parte application to have Rudgers determined a special witness under CPL 190.32 (3). Rudgers is a person more that 12 years old and a victim of a crime defined in article 130 of the Penal Law. The People allege that Rudgers would "suffer very severe emotional or mental stress if required to testify in person before the Grand Jury.” The People’s application is sufficient up to this point, however, it is inadequate regarding sworn allegations of fact *479 supporting the allegation that Rudgers would suffer severe emotional or mental stress if required to testify.
The People’s application contains only three sworn allegations of fact: (1) Rudgers is a resident of the Monroe County Developmental Center; (2) a licensed psychologist has reviewed Rudgers’ records; and (3) the People had conversations with the psychologist. Based on these three facts, the People simply concluded that Rudgers would suffer severe emotional or mental stress. The application contained no reference to any specific information from the psychologist which would have led the People to conclude Rudgers was a special witness as required by the statute. Despite the application’s inadequacies, Rudger’s status can be affirmed in light of the following observations made by the court during its review of Rudgers’ videotaped testimony.
During her testimony, Rudgers became agitated when explaining what happened to her and appeared concerned that a third person, the videotape technician, was present for her testimony. In addition, the Assistant District Attorney had to calm her down at several points during the examination. To have brought this individual into an unfamiliar room filled with strangers and then to have sat her down behind a microphone and question her about something as traumatic and personal as an alleged rape would have caused her severe emotional or mental stress. The People needed more facts regarding the psychologist’s position, in fact a letter or statement from him attached to the application would have been helpful, however, to reverse the order granting special witness status to Rudgers for that reason in light of this court’s ability to observe her testimony firsthand would serve no useful purpose. Thus, defendant’s motion to dismiss on the basis of CPL 190.32 is denied in all respects.
ANATOMICALLY CORRECT DOLLS
Defendant challenges the victim’s use of anatomically correct dolls during her videotaped Grand Jury testimony on two grounds. First, that the victim is not a person designated by CPL 60.44 to use such dolls because she is over 16 years old. Second, that the use of the dolls was not helpful and appropriate thus prejudicing defendant. The People contend the use of the dolls was proper pursuant to Richardson, Evidence § 477 (Prince 10th ed) and appropriate under the circumstances.
CPL 60.44 states: "Any person who is less than sixteen *480 years old may in the discretion of the court and where helpful and appropriate, use an anatomically correct doll in testifying in a criminal proceeding based upon conduct prohibited by article one hundred thirty, article two hundred sixty or section 255.25 of the penal law.”
Where a 73-year-old aphasic victim of sodomy testified with anatomically correct dolls, CPL 60.44 did not operate to prohibit such testimony. (People v Herring, 135 Misc 2d 487, 490 [Sup Ct, Queens County 1987].) The Herring court relied upon the Practice Commentary by Peter Preiser which observed that although CPL 60.44 was aimed at people 16 years and younger the use of models to explain testimony is unquestioned and cited Richardson ("[T]he ' "right to use and introduce properly authenticated maps, diagrams and models to illustrate and explain the testimony of witnesses is unquestioned” ’ ”; People v Herring, 135 Misc 2d, supra,, at 490, quoting Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 60.44, 1987 Pocket Part, at 282, which quotes Richardson, Evidence § 477 [Prince 10th ed]). The Herring court also relied upon the terms used in the statute which imply that the section is to be employed at the Judge’s discretion and decided that if application is not mandatory where a victim is 16 years old or younger, it should not be read to absolutely exclude the use of dolls for witnesses 17 years of age and older. This court agrees with the conclusions reached by the Herring court that the age of the witness does not prohibit the use of anatomically correct dolls.[2]
Defendant’s second argument is that the use of the dolls was not helpful and was, in fact, prejudicial because the dolls reflected the race of the victim and defendant. There is no authority for defendant’s contention. This court fails to see *481 how the use of a black doll as representative of defendant and a white doll as representative of the victim can serve to inflame a Grand Jury any more than observing the testimony of a white victim and a black defendant. Indeed, the use of racially correct dolls would only serve to provide a more accurate description of the alleged crime for the grand jurors and greater aid to the victim as she testified. To do otherwise would mislead the Grand Jury.
UNCONSTITUTIONALITY OF PENAL LAW §§ 130.10 AND 25.00 (2)
Defendant contends that the affirmative defense described in Penal Law § 130.10 violates the State and Federal Constitutions because it places the burden of proof on defendant regarding the issue of the victim’s capacity to consent. Defendant further asserts that even if the provision is constitutional, it violates this particular defendant’s due process rights based on the facts in this case. The People assert that to place the burden on the People to prove that the defendant had knowledge of the victim’s inability to consent would force the People to prove a negative, which courts have declined to do when other affirmative defenses have been challenged in the past. In addition, the People argue that the court could not make a determination that the provision was unconstitutional as applied to this particular case as the facts are disputed; the salient fact being whether or not defendant was a resident at Monroe Developmental Center (MDC) at the time the alleged crime was committed.
The provisions in question state as follows:
"§ 130.10 Sex offenses; defense
"In any prosecution under this article in which the victim’s lack of consent is based solely upon his incapacity to consent because he was mentally defective, mentally incapacitated or physically helpless, it is an affirmative defense that the defendant, at the time he engaged in the conduct constituting the offense, did not know of the facts or conditions responsible for such incapacity to consent.” (Emphasis added.)
"§ 25.00 Defenses; burden of proof * * *
"2. When a defense declared by statute to be an 'affirmative defense’ is raised at a trial, the defendant has the burden of establishing such defense by a preponderance of the evidence.”
This particular issue has been raised in both the Federal and State courts, yet no determination of the constitutionality *482 of Penal Law § 130.10 was made in either instance. (See, Rapetti v James, 784 F2d 85 [2d Cir 1986], question moot as People provided proof that defendant was aware that victim was incapacitated; People v Easley, 42 NY2d 50 [1977], defendant failed to raise defense at trial, therefore, issue not reviewable on appeal.) Other affirmative defenses have been challenged, however, and these cases are helpful.
"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.” (In re Winship, 397 US 358, 364 [1970].) Where a defendant bears the burden of proof regarding the affirmative defense of extreme emotional distress, he has not been deprived of due process of law as the prosecution must still prove every element of the crime charged beyond a reasonable doubt and the affirmative defense "constitutes a separate issue on which the defendant is required to carry the burden of persuasion”. (Patterson v New York, 432 US 197, 207 [1977]; accord, People v Bastidas, 67 NY2d 1006 [1986].)
Here, defendant is charged with the crime of rape in the third degree. The People must prove beyond a reasonable doubt that: (1) Defendant had sexual intercourse with the victim; (2) the victim was mentally defective; and (3) the victim did not consent. (2 CJI[NY] PL 130.25, at 379, 384.) The alleged fact that defendant had no knowledge of the victim’s inability to consent is an issue separate and apart from the elements of the crime stated above. Further, it would be unfair to have the People attempt to prove a negative, particularly when the information is within a defendant’s own knowledge. (People v Rosa, 65 NY2d 380, 386 [1985].) The provisions do not violate defendant’s right to due process of law,[3] thus, defendant’s motion is denied.
For his second argument defendant cites People v Wilt (105 AD2d 1089 [4th Dept 1984]) in support of his contention that Penal Law §§ 130.10 and 25.00 (2) are unconstitutional as applied to this case. In Wilt, defendant challenged the statutory presumption of possession of a weapon in an automobile by all occupants of the automobile at the time the weapon is *483 found. The Wilt court declared the presumption unconstitutional as to that particular defendant because he had presented such strong contrary evidence at trial to rebut the presumption as to render the presumption incredible. (Supra, at 1090.) Here, there is no presumption that a defendant is aware of a victim’s incapacity to consent, thus, defendant is not faced with the burden of rebutting a presumption. Instead, he is faced with the burden of proving a defense that he lacked knowledge of the victim’s capacity to consent. In addition, this court has before it no undisputed facts as the Wilt court did, thus, defendant’s motion based on Wilt is denied.

. Judge Bellacosa made an important observation, however, in the 1984 Practice Commentary to CPL 190.30: ”[F]or the most part the grand juries will take their lead from the prosecutor and not act independently in such matters.” (Bellacosa, 1984 Practice Commentaries, McKinney’s Cons Laws of NY, Book 11A, CPL 190.30,1988 Pocket Part, at 50.)

. The New York State Council on Children and Families commented on CPL 60.44 when it was ready for Governor Cuomo’s approval suggesting that its scope was too narrow implying that dolls were inappropriate for use by mentally retarded adults or by children in civil proceedings. (Mem, July 17, 1986 from Council to Evan A. Davis, Counsel to the Governor.) It appears, however, that others, specifically Attorney-General Robert Abrams, the Division for Youth and the Kings County District Attorney, felt that CPL 60.44 provided specific authorization for the use of the dolls in certain circumstances, but their use has never been prohibited prior to the section’s enactment and should not be prohibited in other circumstances not covered by CPL 60.44 after its enactment. (Mem, July 18, 1986 from Abrams to Governor Cuomo re Assembly 7742-A; letter, July 17, 1986 from Division for Youth, General Counsel to Counsel to the Governor re Assembly 7742-A; and Mem, Mar. 1986 from Kings County District Attorney.)

. In addition, a defendant would not be deprived of his right to a presumption of innocence nor his right against self-incrimination as the defense is one of "confession and avoidance”, i.e., mitigation, and a defendant has the choice of putting the prosecution to the test or asserting the defense in mitigation and pleading for leniency. (People v Herloski, 112 AD2d 5 [4th Dept 1985].)